### THE CASE OF AMES & AL.

*Forgery at common law, may be committed of any writing, which, if genuine, would operate as the foundation of another's liability.*

THIS was an indictment at common law for the forgery of a certain writing obligatory or instrument in writing, which purported to be signed by the selectmen of *Sangerville*, and which was set forth in these words :—" We the subscribers do recom-" mend to all persons to whom it may concern, that the bearer " *J. Leland* is a man of responsibility, and is able to satisfy the " demand of five hundred dollars if he agrees to; we under-" stand that he has bought *C. V. Ames'* land in this town, and " is to pay some demands in *Bucksport* for the said *Ames,* and " we should not be afraid to be *Mr. Leland's* bondsmen for two " or three hundred dollars. *Mr. Ames* and *Mr. Leland* have " made a bargain and have requested us to recommend *Mr. Le-* " *land* so that he may satisfy the demands of the said *Ames*"— with intent, &c. Being convicted of the offence charged in the indictment, the defendants now moved in arrest of judgment that the matter set forth did not amount to any offence indicta-ble at common law.

*McGaw* and *Godfrey* for the defendant contended that the paper was not an instrument upon which forgery at common law could be committed. It was neither a public record, nor a contract between particular individuals, nor a general letter of credit. It did not bind the subscribers to any thing; but tak-en together it amounts to this—that they should not be *afraid* to become the bondsmen of *Leland,* and had been *requested* to recommend him.

*The Attorney General* said that the falsely making or altering of any written instrument with intent to deceive and defraud, was a misdemeanor at common law, and was punishable by fine and imprisonment. It was not necessary that the meditat-ed design should be carried into effect,—the crime consisted in the *intent* of the alteration; and *here* the *crimen falsi* was per-

fected. And he cited *Rex v. Ward*, 2 *Ld. Raym.* 1461. *Commonwealth v. Boynton*, 2 *Mass.* 77. 2 *East. P. C.* 862. *Fawcet's case*, 3 *Chitty's Crim. law*, 780—1.

MELLEN C. J. delivered the opinion of the Court as follows:

The indictment in this case is at common law ; and the motion to arrest the judgment is founded on the idea that it is not forgery at common law to counterfeit such an instrument as that which is set forth in the indictment. The first question is whether it is " an obligation in writing" as alleged, and would have bound the selectmen had it been genuine and actually signed by them. On this point we cannot doubt. It would have subjected them to liability either in the form of an action of *assumpsit*, as a letter of credit to the amount of five hundred dollars;—or to an action on the case in the nature of deceit, as a false representation, made with intent to defraud. In either mode it would operate as the *foundation of their liability* if it had been genuine.

The next question is whether forging *such* an obligation be an offence at common law. On this point the case of *Rex v. Ward*, 2 *Ld. Raym.* 1461. seems decisive. It is there settled that the forging of any writing by which a person might be prejudiced, was punishable as forgery at common law. In that case the defendant was prosecuted at common law for falsely making and forging a writing on the back of a certificate in writing signed by one *Newton*. This is considered by *Chitty* in his treatise on Criminal Law as settling all doubts which might have before existed. See also 2 *East. P. C.* 862. and numerous cases cited in *Rex v. Ward*, among which are 5 *Mod.* 137. 1 *Salk.* 342. *Sty.* 12. *Savage's* case for forging letters of credit, 1 *Sid.* 142.

*Motion overruled.*